UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

FILED
AUG 0 2 2005
CLERK

| | | |
|---|---|---|
| DUANE C. TWO BULLS, | ) | CIV. 04-5120-RHB |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| VS. | ) | |
| | ) | MEMORANDUM OPINION |
| JO ANNE B. BARNHART, | ) | AND ORDER |
| Commissioner of the Social | ) | |
| Security Administration, | ) | |
| | ) | |
| DEFENDANT. | ) | |

## I. Introduction

Duane C. Two Bulls filed his application for supplemental security income ("SSI") benefits on March 4, 2002. (Administrative Record ("AR") 62-65.) Two Bulls alleged that he became disabled on December 1, 1999, because of injuries to his legs. (AR 62.) Two Bulls' application for benefits was denied initially and upon reconsideration. (AR 44-54.) On March 11, 2004, a hearing was held in Martin, South Dakota, before Administrative Law Judge ("ALJ") James W. Olson. (AR 223-42.) ALJ Olson issued an unfavorable decision on March 23, 2004. (AR 28-34.) Two Bulls requested that the Appeals Council review ALJ Olson's decision, but that request was denied. (AR 7-10.) Two Bulls has filed with this Court a motion to overrule the Commissioner's decision denying him benefits. For the following reasons, Two Bulls' motion is denied.

### A. Facts

Two Bulls was born January 15, 1964. (AR 62.) Plaintiff was 35 years old as of December 31, 1999, the date of the alleged onset of his injury and 40 years old when ALJ

Olson issued his decision on March 23, 2004. Two Bulls quit high school in the 9th grade, but did receive his general equivalency diploma ("GED") in 1988. (AR 229.) Plaintiff's prior work includes maintenance worker and temporary laborer. (AR 71.)

Plaintiff's injuries primarily stem from automobile accidents in which he has been involved. In 1979, Two Bulls was struck by a hit-and-run driver. (AR 171.) He was described as having a "crush injury" to the left thigh and lower leg. (AR 175.) There was no fracture, dislocation, or other abnormality of his left femur, but there was an acute fracture of his left fibula and left ankle. (AR 179.) This resulted in a bone screw being inserted in Two Bulls' left ankle. (AR 180.) Medical records reveal that approximately one year after the accident Two Bulls had a full range of motion and was able to jump on his leg. (AR 198.) Plaintiff was again struck by a vehicle in 1997, but records of that incident are not available. On March 27, 2001, Two Bulls presented to Indian Health Services in Pine Ridge after his right lower leg and foot were run over by a vehicle. (AR 136.) X-rays were taken and revealed no new fractures. (AR 136, 142.) Two Bulls was diagnosed as having suffered a sprained ankle and given crutches and an ACE bandage. (AR 136.)

Two Bulls has also injured himself in various non-automobile related accidents. He wrecked his 10-speed bike on December 13, 1999, hurting his hand and leg. (AR 131.) On March 15, 2000, he fell off his horse and broke his right arm. (AR 108.) Medical records further indicate that Two Bulls has presented to the emergency room intoxicated and was reported to have been abusing aerosols. (AR 191.)

On August 30, 2002, George Ceremuga, D.O., examined Two Bulls in connection with his application for disability benefits. (AR 144-47.) Plaintiff was complaining of pain which inhibited his ability to perform labor jobs, but he had not seen an orthopedic surgeon since his

2

surgery in 1997. (AR 144.) The right knee was slightly more swollen than the left, but he had a full flexion range of motion. (AR 146.) Ankle range of motion was slightly diminished, but internal rotation was intact. (Id.) Dr. Ceremuga felt that it would be difficult for Two Bulls to lift and carry more than 20 pounds with regular frequency; he can stand and walk for extended periods of time, but he needs to sit and recover an equal amount of time; it will be difficult to stoop, climb, and kneel. (AR 146.) Dr. Ceremuga recommended Two Bulls receive alcohol treatment and see an orthopedist. (AR 147.)

On September 18, 2002, Kristin A. Jensen, M.D., reviewed Two Bulls' records and completed a Physical Residual Functional Capacity Assessment form. (AR 159-66.) Dr. Jensen opined that Two Bulls: could lift or carry 20 pounds occasionally and 10 pounds frequently; could stand or walk with normal breaks for about 6 hours in an 8-hour workday; could sit with normal breaks for about 6 hours in an 8-hour workday; was limited in his ability to push or pull with his lower extremities; could not climb ladders, ropes, or scaffolds; could stoop, kneel, crouch, or crawl occasionally; and could balance frequently. (AR 160-61.) Dr. Jensen also determined that plaintiff had no manipulative, visual, or communicative limitations, but he should avoid concentrated exposure to extreme cold. (AR 161-63.) Dr. Jensen finally noted that plaintiff had an alcohol problem, but that it did not affect his daily living. (AR 166.)

### B. Hearing Testimony

The administrative hearing was held on March 11, 2004, in front of ALJ Olson. (AR 223.) Two Bulls appeared at the hearing without an attorney, stated that he realized he was entitled to have an attorney present, and wanted to proceed without an attorney. (AR 225-26.) ALJ Olson then explained the manner in which events were to proceed in the hearing and Two

Bulls confirmed that he understood. (AR 228.) ALJ Olson questioned Two Bulls and he testified that he did not have problems reading or writing, (AR 230); the last time he worked was as a part-time laborer in 2001, (Id.); he cannot work because his legs hurt, mainly in the evenings or when it gets cold, (AR 231); his leg sometimes "locks up" after he has been sitting for awhile, (AR 232); his left ankle has a pin in it that hurts when he walks on it for a distance, (AR 232-33); he only takes Tylenol or aspirin for pain, (AR 233); he can do housework, but cannot run anymore, (AR 233-34); he rides horses, fishes, hunts, walks around, goes to pow wows, watches basketball and football games, and goes out to eat dinner, (AR 234-35). Two Bulls testified that he spends most of his day watching TV or playing checkers or cards. (AR 235-36.) He can sit three to four hours at a time and stand about one hour. (AR 236.) Plaintiff can walk about half a mile and lift about 80 pounds. (Id.)

ALJ Olson also examined William Tysdale, a vocational expert. (AR 237-42.) Tysdale listened to the hearing testimony and reviewed the exhibits. (AR 238.) He stated that Two Bulls' prior work as a maintenance worker compared with that of a janitor and was a medium position that was semi-skilled. (AR 239.) Temporary laborer compared to that of a construction worker and was very heavy and unskilled. (Id.) ALJ Olson then posed the following hypothetical to Tysdale:

> I want you to assume you have a gentleman with an eighth grade education [plus a GED] and his work history who is a younger individual as that term is defined by the Social Security Regulations. I want you to assume further this Exhibit 6, page three. It would be difficult to lift and carry more than 20 pounds. He can stand and walk for a prolonged period of time, but will need to sit and recover for an equal amount of time. So if he sits for two hours he would have to stand for two hours and vice versa. It's very difficult for him to stoop, climb, and kneel. And he needs a job that would free him from constant trauma to his legs. Can you identify any jobs that fit with that set of limits?

(AR 239-40.) Tysdale stated this hypothetical individual could do light unskilled activity and provided the following examples of jobs that qualified: cashier–900,000 positions nationally, 15,000 position regionally; small products assembler–125,000 positions nationally, 3,000 position regionally; electronics worker–100,000 positions nationally, 2,000 position regionally (AR 240.) Tysdale also testified that even though Two Bulls got his GED in 1988, it would still be the equivalent of having graduated from high school at that time. (AR 241.)

### C.  Other Evidence

Two Bulls completed a daily activities questionnaire in connection with his claim for disability benefits. (AR 81-89.) He noted he can take care of all his personal needs, prepare meals, shop, and do all household chores. (AR 81-82.) He watches TV and reads all of the time and can remember what he observes. (AR 82.) Plaintiff participates in many activities for relaxation whenever he can, both alone and with others. (AR 83.) He has no problems remembering or concentrating and does not have trouble finishing tasks once he starts them. (Id.) Sometimes he uses a cane or crutch to help him walk. (AR 87.) He can lift about 100 pounds with his arms. (Id.)

### D.  ALJ Olson's Decision

At step one, ALJ Olson found that Two Bulls had not engaged in any substantial gainful activity. (AR 29.) At steps two and three, ALJ Olson found that Two Bulls' right knee pain, pin in left ankle, leg and right ankle pain were severe impairments, but they did not meet or equal the requirements set forth in the Listing of Impairments. (AR 30.) At step four, the ALJ discussed Two Bulls' residual functional capacity ("RFC") and credibility. (AR 30-32.) ALJ Olson found that the evidence in record did not support Two Bulls' alleged limitations. (AR 31.) He noted that claimant is still able to attend to his personal needs, do all housework, and

engage in horseback riding. (AR 31.) ALJ Olson also found that Two Bulls' medications do not suggest a serious impairment. (AR 31.) ALJ Olson determined that Two Bulls had the RFC

> to sit for 3 to 4 hours at one time and can stand and walk for prolonged periods of time, such as stand for 1 hour at one time and walk for ½ mile but would need to sit and recover for an equally [sic] amount of time, has difficulty stooping, climbing and kneeling, must be free from constant trauma to his legs, and can lift and carry 20 pounds.

(Id.) He concluded, however, that Two Bulls could not return to his past relevant work. (AR 32.) At step five, ALJ Olson found, through the testimony of vocational expert Tysdale, that based on Two Bulls' age, education, work experience, and RFC, he could engage in work that exists in significant numbers. (AR 33.) Specifically, he stated that Two Bulls could work as a cashier, small products assembler, and electronics worker. (Id.) In conclusion, ALJ Olson determined that Two Bulls was not under a disability as defined in the Social Security Act. (Id.)

### E.     Evidence Submitted to Appeals Council

After ALJ Olson issued his opinion, newly retained counsel for Two Bulls submitted additional evidence to the Appeals Council. The evidence submitted was the results from standardized tests Two Bulls took while enrolled in grades 7 and 8 in Loneman School. (AR 218-22.) Results revealed that Two Bulls scored in the 10th percentile nationally. (AR 219.) This information was considered by the Appeals Council but did not provide a basis for overruling ALJ Olson's decision. (AR 7-9.)

## II.    Standard of Review

The decision of the ALJ must be upheld if it is supported by substantial evidence in the record as a whole. See 42 U.S.C. § 405(g); Metz v. Shalala, 49 F.3d 374, 376 (8th Cir. 1995)

(citing Sullins v. Shalala, 25 F.3d 601, 603 (8th Cir. 1994), *cert. denied*, 513 U.S. 1076, 115 S. Ct. 722, 130 L. Ed. 2d 627 (1995)). Substantial evidence is less than a preponderance, but is enough so that a reasonable mind would find it adequate to support the ALJ's conclusion. Singh v. Apfel, 222 F.3d 448, 451 (8th Cir. 2000). In determining whether existing evidence is substantial, the Court must consider "evidence that detracts from the Commissioner's decision as well as evidence that supports it." Id. (quoting Warburton v. Apfel, 188 F.3d 1047, 1050 (8th Cir. 1999)). In short, a reviewing court should neither consider a claim *de novo*, nor abdicate its function to carefully analyze the entire record. Nevland v. Apfel, 204 F.3d 853, 857 (8th Cir. 2000) (quoting Brinker v. Weinberger, 522 F.2d 13, 16 (8th Cir. 1975)).

**III.     Discussion**

Three issues have been presented to the Court for review: (1) Whether the claimant intelligently waived his right to counsel; (2) Whether the ALJ fulfilled his heightened duty to develop the evidence; and (3) Whether the ALJ's formulation of RFC capacity met legal standards.

**A.     Did the claimant intelligently waive his right to counsel?**

"A Social Security claimant has a statutory right, which may be waived, to be represented by counsel at a hearing before an ALJ." Graham v. Apfel, 129 F.3d 1420, 1422 (11th Cir. 1997). Prior to the hearing, Two Bulls was informed in writing in the Notice of Hearing (AR 41), Notice of Disapproved Claim (AR 48), and Notice of Reconsideration (AR 53), that he had a right to representation. Additionally, at the hearing, ALJ Olson told Two Bulls that he had the right to have an attorney and Two Bulls said he understood that right. (AR 225.) Two Bulls said he understood that an attorney would not get compensated unless Two Bulls received back-due benefits. (Id.) Two Bulls then stated that he wanted to proceed

without an attorney. (AR 225.) These facts establish that Two Bulls was aware of right to representation and he adequately waived that right. Thus, the Court finds that Two Bulls adequately waived his right to counsel.

### B. Did the ALJ fulfill his heightened duty to develop the evidence?

Two Bulls claims ALJ Olson did not properly develop the record because he failed to question him about his ability to function day in and day out; failed to obtain an orthopedic examination; and failed to order a psychological evaluation. "A social security hearing is a non-adversarial proceeding, and the ALJ has a duty to fully develop the record." Ellis v. Barnhart, 392 F.3d 988, 994 (8th Cir. 2005). The "mere lack of counsel does not in itself deprive a claimant of a fair hearing, [but] it does enhance the ALJ's duty to bring out the relevant facts." Highfill v. Bowen, 832 F.2d 112, 115 (8th Cir. 1987). "Unfairness or prejudice resulting from an incomplete record–whether because of lack of counsel or lack of diligence on the ALJ's part–requires a remand." Id.

Two Bulls claims the ALJ did not sufficiently question him about his ability to function day in and day out. At the hearing, Two Bulls testified how a normal day in his life progressed and stated he can sit for three or four hours, stand for an hour, walk for a half a mile, and lift 80 pounds with his arms. (AR 236.) ALJ Olson then asked him if there was anything he wanted to add and Two Bulls said "no." (AR 237.) Two Bulls was allowed to, and did, question the vocational expert and prior to the close of the hearing ALJ Olson asked if there were any final remarks Two Bulls wanted to add, to which he replied "no." (AR 240-42.) This testimony was in addition to the numerous questions posed by ALJ Olson which were designed to elicit answers from Two Bulls about his pain and limitations. The Court finds that ALJ Olson properly questioned Two Bulls about his ability to function and gave him every opportunity to

expound on his alleged limitations. Moreover, Two Bulls has not established that he suffered any unfairness or prejudice in the proceeding.

Two Bulls also claims the ALJ should have obtained an orthopedic examination and psychological evaluation. "The ALJ is required to recontact medical sources and may order consultative evaluations only if the available evidence does not provide an adequate basis for determining the merits of the disability claim." Sultan v. Barnhart, 368 F.3d 857, 863 (8th Cir. 2004) (citing 20 C.F.R. § 416.919a(b)). "The regulations, however, do not require the Secretary or the ALJ to order a consultative examination of every alleged impairment." Matthews v. Bowen, 879 F.2d 422, 424 (8th Cir. 1989). "An ALJ ordinarily has no obligation to investigate claims not presented at the time of the application for benefits and not offered at the hearing as a basis of disability." Sullins v. Shalala, 25 F.3d 601, 605 (8th Cir. 1994). The Eighth Circuit has held that "[a]n ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision." Haley v. Massanari, 258 F.3d 742, 749-50 (8th Cir. 2001) (internal quotations and citations omitted). It has been further held that "reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial." Id. at 750 (citations omitted). Finally, the claimant has "the responsibility for presenting the strongest case possible." Thomas v. Sullivan, 928 F.2d 255, 260 (8th Cir. 1991).

Dr. Ceremuga stated that a full orthopedic evaluation would help determine Two Bulls' long-term prognosis. (AR 147.) He did not, however, submit that a full orthopedic evaluation would assist the ALJ in determining whether Two Bulls was disabled. Dr. Ceremuga stated plaintiff could lift and carry a limited amount of weight, needed to rest a commensurate amount of time after standing, and should not stoop, climb, or kneel. (AR 146.) Dr. Ceremuga's

9

diagnosis and recommendation for plaintiff are consistent with plaintiff's own subjective complaints of pain and Dr. Jensen's opinion. Thus, the evidence present in the record provided an adequate basis for the ALJ's determination that Two Bulls was not disabled.

ALJ Olson was not required to order a consultative psychological examination because the evidence in the record indicated Two Bulls did not have a mental impairment. On plaintiff's application for benefits he stated that his impairment was "injured legs." (AR 62.) On his daily activities questionnaire Two Bulls stated he remembers what he reads and watches on TV, does not have problems remembering or concentrating, finishes tasks and chores, and can follow written and verbal instructions. (AR 81-83.) At the hearing plaintiff stated that he does not have problems reading or writing, can play checkers and cards, and did not state he suffered from any mental limitations when the ALJ asked if he had anything to add. (AR 230, 236, 237, 241.) The only possible evidence of mental limitations stem from plaintiff's poor test scores from 7th and 8th grade, however, this evidence is insufficient to rebut plaintiff's own statements and the fact he attained his GED. Thus, the Court finds that ALJ Olson properly developed the record and was not required to order a consultative orthopedic or psychological examination.

### C. Did the ALJ's RFC formulation meet legal standards?

Two Bulls argues that ALJ Olson did not meet his burden at step five because the medical evidence did not show that Two Bulls could perform at levels required by the jobs named on a day in and day out basis and he did not match Two Bulls' educational development with the jobs asserted by the vocational expert. "If the ALJ finds that the claimant cannot return to his past relevant work, the burden of proof shifts to the Commissioner, who then has the duty to establish that the claimant is not disabled within the meaning of the Act." Wilcutts

v. Apfel, 143 F.3d 1134, 1137 (8th Cir. 1998) (quoting Talbott v. Bowen, 821 F.2d 511, 514-15 (8th Cir. 1987)). "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Social Security Ruling 96-8p. "When determining whether a claimant can engage in substantial employment, an ALJ must consider the combination of the claimant's mental and physical impairments and determine the claimant's RFC." Masterson v. Barnhart, 363 F.3d 731, 737 (8th Cir. 2004) (citation omitted). "In evaluating a claimant's RFC, the ALJ is not limited to considering medical evidence, but is required to consider at least some supporting evidence from a professional." Id. at 738. It is the Commissioner's burden to establish the claimant can perform other work. Porch v. Chater, 115 F.3d 567, 571 (8th Cir. 1997). "Ordinarily, the Commissioner can rely on the testimony of a vocational expert to satisfy this burden." Id.

ALJ Olson based his determination that plaintiff could perform a full range of light and sedentary work on several pieces of evidence. (AR 32.) Two Bulls testified that he can sit for three or four hours, stand for an hour, walk for a half a mile, and lift 80 pounds with his arms. (AR 236.) Dr. Ceremuga stated Two Bulls could lift 20 pounds regularly and stand and walk for extended periods of time with sufficient recovery time, but that it would be difficult to stoop, climb, and kneel. (AR 146.) Dr. Jensen opined that Two Bulls could lift or carry 20 pounds occasionally and 10 pounds frequently; could stand or walk with normal breaks for about 6 hours in an 8-hour workday; could sit with normal breaks for about 6 hours in an 8-hour workday; was limited in his ability to push or pull with his lower extremities; could not climb ladders, ropes, or scaffolds; could stoop, kneel, crouch, or crawl occasionally; and could

11

balance frequently. (AR 160-61.) Two Bulls' admissions along with the opinions of Drs. Ceremuga and Jensen support ALJ Olson's RFC determination that claimant could perform a broad range of "light work." (AR 32.)

ALJ Olson asked the vocational expert whether jobs exist in the national economy for an individual of Two Bulls' age, education, past relevant work experience, and with his RFC to do light work. (AR 33.) Vocational expert Tysdale stated Two Bulls could work as a cashier, small products assembler, and electronics worker. (AR 240.) Plaintiff contends Tysdale's opinion is flawed because Two Bulls' standardized test scores reveal he could not perform these jobs. Two Bulls did not submit his standardized test scores to ALJ Olson, but he did submit them to the Appeals Council, which determined that they did not affect ALJ Olson's opinion. (AR 7-9.) The Court finds that although plaintiff's test scores in 7th and 8th grade were low, he was still able to obtain his GED. This factor alone significantly undercuts plaintiff's argument that he is mentally unable to perform the unskilled jobs listed by the vocational expert.

Cashier is listed as light work with general educational development requirements in reasoning–level 3; math–level 2; and language–level 2. Dictionary of Occupational Titles ("DOT") 211.462.010. Electronics worker is listed as light work with general educational development requirements in reasoning–level 2; math–level 1; and language–level 2. DOT 726.687-010. Small products assembler is listed as light work with general educational development requirements in reasoning–level 2; math–level 1; and language–level 1. DOT 706.684-022.

Level 2 reasoning requires Two Bulls to be able to: "Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with

12

problems involving a few concrete variables in or from standardized situations." Level 1 math requires Two Bulls to be able to: "Add and subtract two-digit numbers. Multiply and divide 10's and 100's by 2, 3, 4, 5. Perform the four basic arithmetic operations with coins as part of a dollar. Perform operations with units such as cup, pint, and quart; inch, foot, and yard; and ounce and pound." Level 1 reading requires Two Bulls to be able to: "Recognize meaning of 2,500 (two- or three-syllable) words. Read at rate of 95-120 words per minute. Compare similarities and differences between words and between series of numbers."

The Court finds that at the very least Two Bulls would be able to work as a small products assembler, which has the most minimal requirement of the three unskilled occupations provided by the vocational expert. Two Bulls obtained a GED, listed injured legs as his only impairment, and stated he has no memory problems and can follow instructions. These facts, when combined with the complete lack of medical evidence that would show Two Bulls suffers from a mental impairment, reveals that ALJ Olson satisfied his burden in establishing plaintiff could perform other work as it exists in the national economy. Thus, the Court finds that ALJ Olson's RFC formulation did meet legal standards.

## IV.  Conclusion

Based upon the foregoing, it is hereby

ORDERED that Two Bulls' request that the Court reverse the decision of the Commissioner and award Social Security benefits (Docket #1) is denied.

Dated this *10T* day of August, 2005.

BY THE COURT:

*/s/ Richard H. Battey*
RICHARD H. BATTEY
UNITED STATES DISTRICT JUDGE